# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| DAWN LEHR, | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION NO. 3:12-2046 |
| | | (JUDGE MANNION) |
| v. | : | |
| CAROLYN W. COLVIN,[1] | : | |
| Acting Commissioner of Social Security | | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

The record in this action has been reviewed pursuant to 42 U.S.C. §§405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.

## I.  PROCEDURAL HISTORY.

On July 10, 2009, the plaintiff filed an application for a period of DIB

---

[1] On February 14, 2013, Carolyn Colvin became acting Commission of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil procedure, she has been substituted as the defendant.

alleging her disability began on April 15, 2007. (Tr. 20). Her claim was initially denied on December 10, 2009 and she filed a written request for hearing on February 5, 2010. (Id.). A hearing was held before an Administrative Law Judge (ALJ) on January 20, 2011. (Id.). After taking testimony and reviewing the medical records, the ALJ found the plaintiff was not disabled within meaning of the Social Security Act ay anytime between April 15, 2007 and September 30, 2010, the date last insured. 20 C.F.R. 404.1520(g). The Appeals Council denied the plaintiff's request for review, making the ALJ's decision final. See 42 U.S.C. §405(g).

At issue before this court is whether substantial evidence supports the Commissioner's decision that the plaintiff was not disabled because she was capable of performing a limited range of light work prior to the date when her insured status expired for purposes of disability insurance benefits. The plaintiff claims four errors: (1) the ALJ failed to consider all of the plaintiff's limitations; (2) the ALJ erred in not giving "controlling weight" to the treating physician's opinions; (3) the ALJ erred in not considering the side effects of the plaintiff's medications; and (4) the ALJ did not sustain his burden of proof

when determining suitable work the plaintiff could do. (Doc. No. 12). The acting commissioner of Social Security filed a brief in opposition on May 21, 2013. (Doc. No. 15). The case is ripe for the court's ruling.

II.     **STANDARD OF REVIEW.**

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999), *Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

### III. DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. See also *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must

sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (Tr. 22-29). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time during the period from her alleged onset date of April 15, 2007 through her date last insured of September 30, 2010. (Tr. 22). At step two, the ALJ concluded that the plaintiff's impairments (anxiety and lumbar degenerative disc disease) were severe within the meaning of the Regulations. (Id). At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Subpart P, Appendix 1, Regulations No. 4. (20 C.F.R. §404.1520(d), §404.1520(d) and §416.920(d)). (Tr. 22).

The ALJ found that the plaintiff has the residual functional capacity

("RFC"), to perform a range of light work. (Tr. 24). At step four, the ALJ found that through the date last insured, the plaintiff was unable to perform her past relevant work. (Tr. 28). At step five, the ALJ concluded that considering the plaintiff's residual functional capacity, age, education, and work experience, there were significant jobs in the national economy that the plaintiff could perform. (Tr. 28-29).

The ALJ therefore concluded that the plaintiff had not been under a disability, as defined in the Act, at any time from September 9, 2008, the alleged onset date, through the date of last insured, September 30, 2010. 20 C.F.R. §§ 404.1520(g) and 216.920(g). (Tr. 29).

## IV.    BACKGROUND

The plaintiff was a 33-year-old woman at the time of the decision and was therefore considered a "younger person" under the Regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Her prior work includes a material handler, food truck vendor, house keeper at York Hospital, and clerk. (Tr. 20, 48-50). She underwent back surgery in May 2006, (Tr. 188), and was subsequently treated for an infection to her back, which cleared up. (Tr. 209). She returned to work after the surgery and was still working in August 2006.

6

(Tr. 228).

After her surgery, the plaintiff saw pain specialist Michael A. Klein, who reviewed an MRI dated August 31, 2006 that showed degenerative disc disease between the L4 and S1. (Tr. 223). The plaintiff complained of back pain that was relieved approximately 50% in February 2006 and 20% in November 2006 by injections. (Tr. 222). Based on the record, the plaintiff's back pain got worse between August 2006 and November 2006, but was decreasing in December 2006. (Tr. 222-230). Dr. Klein recommended continued steroid injections to relieve the pain. (Tr. 223). During the December 2006 visit, the plaintiff showed normal gait, a well-tolerated straight leg raising exam, lumbar extension was well tolerated, and her strength sensation and reflexes in her lower back were within normal limits. (Tr. 223). In January 2007, the plaintiff received another steroid injection, which relieved her pain approximately 50%. (Tr. 220).

The plaintiff began seeing her treating physician, Dr. Robert Stremmel, D.O., in February 2009. (Tr. 275). Dr. Sullivan referred her to Doctor Craig Sullivan, D.O., an orthopedist at the same time. (Tr. 268). Dr. Sullivan diagnosed her with a failed back decompression and probable epidural fibrosis in February 2009, recommending a lumbar corset, prescriptions, and

physical therapy. (Tr. 273). In May 2009, after reviewing a recent MRI, Dr. Sullivan concluded the plaintiff had a central protrusion at the L5-S1 disc and recommended a series of steroid injections for treatment. (Tr. 268). In December 2009, she returned to Dr. Sullivan and he noted she had a recurring disc disease, but prescribed further physical therapy, more steroid shots, and prescriptions. (Tr. 298).

Dr. Stremmel has treated the patient since February 2009. Most significantly, in October 2010 Dr. Stremmel completed a medical source statement of ability to do work-related activities. (Tr. 323). He opined the plaintiff could lift and carry 10 pounds frequently, lift and carry up to 20 pounds on occasion, and lift up to 50 pounds on occasion. (Id.). He noted she could sit, stand, or walk for an hour at a time and could stand for three hours, sit for three hours, and walk for two hours total in an eight-hour period. (Tr. 324). After eight hours, the plaintiff would have to lay down, but it is unclear how long she would need to lay down for. (Id.). He also concluded she could perform almost any upper body movement, except for pushing or pulling, and could occasionally climb stairs, stoop, kneel, crawl, and crouch. (Tr. 326). She could also drive frequently and could maintain a routine lifestyle. (Tr. 327-28).

The plaintiff testified that she could sit or stand for only 25-35 minutes

at a time, had to lie down frequently, (Tr. 41), could not lift a half-full pot of water, (Tr. 46), and had trouble walking up as few as a few flights of stairs. (Tr. 42-43). However, in several forms she indicated that she takes her children to school, cleans her house, makes meals, takes care of the family pet, does laundry, and clears her flowerbeds. (Tr. 154-56).

## V. DISCUSSION

A. <u>The ALJ properly evaluated the opinions of the plaintiff's treating physician and her limitations based on the objective medical evidence of record</u>

The plaintiff argues that the ALJ failed to accord the appropriate weight to the opinions of her treating physician, Dr. Stremmel, and her treating orthopedist, Dr. Sullivan. (Doc. No. 12). She specifically contends the ALJ erred by not giving "controlling weight" to the treating physician's opinions.[2] (Id.). Moreover, she claims that the ALJ failed to appropriately consider all of the limitations noted by the treating physician. (Id.). Although listed as two

---

[2]The plaintiff claims the ALJ "rejected the assessment of the treating physician." (Doc. No. 12). This is not an accurate reflection of the ALJ's decision. In fact, the ALJ gave "substantial weight" to the treating physician's opinion. (Tr. 27).

9

separate errors, the essential question to each is whether the ALJ properly considered and weighted the limitations that are contained within the objective medical evidence of record.

The ALJ must review the record and weigh those opinions against the evidence presented. "While the ALJ is, of course, not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Kent v. Schweiker*, 701 F.2d 110, 115 n.5 (3d Cir. 1983). Therefore, the court will evaluate whether the ALJ erred by giving substantial weight to the treating physician's opinions and properly evaluated the plaintiff's RFC. (Tr. 27-28). *See Corly v. Barnhart*, 102 Fed. App'x 752 (3d Cir. 2004); *see also Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1999) (holding that a statement by a treating physician deeming a plaintiff "disabled" or "unable to work" is not dispositive. An ALJ must review all the medical findings and other evidence and weigh it against the opinion of the treating physician).

The Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in your case record," then it is to be given controlling weight. 20 C.F.R. §416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. §416.927(d)(2)(I).

Additionally, the nature and extent of the treatment relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. §416.927(d)(2)(ii).

11

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); see also *Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See *Adorno, 40 F.3d at 48*. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer, 186 F.3d at 429*; *Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988)*; *Kent, 710 F.2d at 115*.

*Id.* at 317-318.

The ALJ credited her treating physician's opinion that, despite her back

injury, the plaintiff could frequently lift up to 10 pounds and, occasionally, up to 50 pounds, (Tr. 323), could frequently carry 10 pounds and occasionally up to 20 pounds, (Id.), sit for three hours in an eight hour period, and stand/walk for five hours in an eight hour period. (Tr. 27, 324). The plaintiff does not challenge these findings, but points to the fact that the doctor wrote that the plaintiff would need to lay down "if the total time for sitting, standing and walking does not equal or exceed 8 hours." (Tr. 324). Moreover, the doctor goes on to note the plaintiff could do the following activities for up to 1/3 of her workday (over two hours, but not repetitiously): climb stairs and ramps, stoop, kneel, and crouch. (Tr. 326).

After giving significant weight to the treating physician's opinions, the ALJ then took testimony from a vocational expert. (Tr. 57). The plaintiff seems to indicate that because there is a conflict between SSR 83-12 and the vocational expert's testimony, the ALJ erred by not explicitly applying the sitting/standing issues addressed in that program policy statement. SSR 83-12 states in relevant part:

> However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a *VS should be consulted to clarify the implications for the*

>    *occupational base*.

SSR 83-12 1983 WL 31253, at *4 (emphasis added). The ALJ did consult a vocational expert about the issues of the sit/stand option given the plaintiff's limitations as required by SSR 83-12. (Tr. 58). The vocational expert discussed at length the possible sitting, standing, and walking options that were included with each job. (Tr. 61-64, 66-67). The vocational expert specifically noted that several of the occupations had sit/stand options: bench assembler, (Tr. 61), electrical assembler, and production assembler. (Tr. 62). Moreover, these occupations contained one hour breaks where the plaintiff could walk during the work shift and allowed the plaintiff move within a few feet of the work station. (Tr. 61). Given the limitations contained in the objective medical record discussed above, the ALJ did not err in his hypothetical and it was supported by the uncontroverted testimony of the vocational expert.

Moreover, the ALJ specifically addressed the difference in job description between the vocational expert and the Dictionary of Occupational Titles (DOT). (Tr. 29, 70). The DOT does not contain any sit/stand description and the vocational expert based his opinion on his unchallenged experience and background. (Tr. 29, 120-22) *See Boone v. Bernhart*, 353 F.3d 203, 219 (3d Cir. 2003) (noting without holding that the ALJ must explain decision to

14

prefer the testimony of the vocational expert over the DOT was "the most sensible of the options"). The plaintiff also testified she could do dishes, cook, (Tr. 41), drive for periods of up to 15 miles before taking a short break, (Tr. 44), and take her children to various places, including her friend's horse farm, (Tr. 69). These normal daily activities support the ALJ's conclusion that these "are not indicative of totally debilitation limitations of function." (Tr. 27).

The plaintiff claims that because the treating physician stated the plaintiff would be laying down after eight hours of alternating between sitting, standing, and walking, it was error for the ALJ to exclude the treating physician's conclusion about "laying down" from his hypothetical questions to the vocational expert. (Tr. 324). The plaintiff points this court to *[Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112 (3d Cir. 2000)](#) in support of her position. In that case, the ALJ failed to mention or explain a host of material medical discrepancies in the record, so remand was required. *Id.* However, that court noted "the ALJ must review all of the *pertinent medical evidence*, explaining his conciliations and rejections." *Id.* (emphasis added).

Based on the form itself, it was unnecessary for the ALJ to include this information because his hypothetical was limited to activity occurring after an

eight-hour day. (Tr. 58, 324).[3] In sum, it falls outside of *Burnett* because the evidence was not pertinent to the work schedule in question. A typical shift, as noted through the ALJ's question, is approximately eight hours. (Tr. 58). Therefore, in making his determination as to the jobs the plaintiff could perform for that period of time, it was proper not to include the doctor's additional conclusion. There was no error in excluding that part of the doctor's opinion.

The plaintiff goes on to challenge the ALJ's evaluation of the plaintiff's treating orthopedist, Dr. Sullivan. (Doc. No. 12). The plaintiff, however, does not indicate how the doctor's findings should have affected the ALJ's disability determination. The ALJ noted Dr. Sullivan's findings, (Tr. 26), but even upon reviewing all of his notes and conclusions, it is unclear how the ALJ should have applied these findings. (Tr. 268-272, 297-98). In sum, his last report indicates plaintiff's back condition were "consistent with recurring disc disease" and that it could be treated through physical therapy, medication, and steroid

---

[3]The opinion itself is inconsistent with the doctor's own question form. He noted the plaintiff could sit, walk, and stand for a total of eight hours, but subseqently said "if the total time for sitting, standing, or walking *does not equal or exceed 8 hours*," then the plaintiff would need to lay down. (Tr. 324)(emphasis added). Given the plaintiff could sit, stand, and walk for a period of exactly eight hours, then it was unnecessary for him to answer this question. Given the inconsistency, the ALJ was further justified in omitting it as irrelevant to his hypothetical.

16

shots. (Tr. 297-98). However, despite having another appoint one month later in January 2010, the plaintiff submitted no other evidence and, as far as the record appears, did not return to the office for treatment. (Id.). The ALJ did not reject or ignore his opinions, but the treating orthopedist did not make any recommendations about how his diagnosis would affect the plaintiff's ability to work. As such, the ALJ properly deferred to the determinations of the plaintiff's treating physician who, even with the orthopedist's diagnoses, made the previously discussed conclusions about the plaintiff's disability. The ALJ did not err in his evaluation of Dr. Sullivan's diagnosis.

The plaintiff also claims that the ALJ improperly gave little weight to the plaintiff's testimony about her symptoms. The plaintiff testified that she could sit or stand for only 25-35 minutes at a time, had to lie down frequently, (Tr. 41), could not lift a half-full pot of water, (Tr. 46), and had trouble walking up as few as a few flights of stairs. (Tr. 42-43). The ALJ pointed to significant evidence in the record in support of his credibility determination regarding this testimony. (Tr. 26). Her own treating physician noted a variety of activity that could be performed up to one hour and for as much as three or five hours in an eight hour period. His evaluation included her lifting weights up to 50 pounds and carrying weights up to 20 pounds. (Tr. 324). Moreover, the plaintiff

17

was scheduled for treatment and injections to treat her back pain, but did not return to her treating doctor for the procedure. (Tr. 26, 295, 298). Further, the plaintiff noted significant activity that requires various sitting/standing positions and time in forms she completed. (Tr. 154-56). Given these clear contradictions between the plaintiff's testimony and the objective evidence of the record, the ALJ's evaluation was not in error.

> B. The ALJ properly excluded the side-effects of the plaintiff's medication in his hypothetical to the vocational expert

"We do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant . . . [Rather, t]he hypotheticals posed must accurately portray the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments as contained in the record." *[Rutherford v. Barnhart](), 399 F.3d 546, 554 (3d Cir. 2005)*. The ALJ noted that the plaintiff testified that her medications made her sleepy and made it difficult for her to concentrate. (Tr. 46, 56, 67). The ALJ pointed out that in several parts of the record, the plaintiff indicated she suffered no side effects from her medications, (Tr. 151), or was off any prescription medications. (Tr. 176, 226). Her treating physician further notes no side effects with any medication, despite having her come for monthly visits and

18

prescription refills from February - September 2009. (Tr. 275-79). Given the substantial medical evidence to support the ALJ's decision it was not error to exclude her claims of sleepiness in the hypothetical question.

### C. The ALJ met his burden of production

The plaintiff finally claims that the defendant failed to show that the plaintiff can perform other work as defined under 20 C.F.R. §416.920(f). *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). This argument rests on the same grounds the court has already covered. Namely, whether the ALJ improperly handled the diagnosis of the plaintiff's treating physician and whether the hypothetical question posed to vocational expert was in line with the substantial evidence of record. As the court has already determined the ALJ's actions were not in error, no further discussion is necessary.

## IV. CONCLUSION

For the reasons stated above, the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), is **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
United States District Judge

**DATE: December 31, 2013**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-2046-01.hhs.wpd